```
 1                UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF OHIO
 2                     WESTERN DIVISION

 3   UNITED STATES OF AMERICA,        Docket No. 3:15CR24

 4            Plaintiffs,             Toledo, Ohio

 5            v.                      April 11, 2016

 6   PABLO DURAN, JR.,

 7            Defendants.

 8   -----------------------------

 9               TRANSCRIPT OF SENTENCING HEARING
                 BEFORE THE HONORABLE JAMES G. CARR
10                 UNITED STATES DISTRICT JUDGE

11

12   APPEARANCES:

13   For the Plaintiffs:  Chelsea S. Rice
                          Office of the U.S. Attorney
14                        801 Superior Avenue, W, Suite 400
                          Cleveland, Ohio 44113
15                        (216) 622-3752

16                        Dana Mulhauser
                          U.S. Department of Justice
17                        950 Pennsylvania Avenue
                          Washington, DC 20530
18                        (202) 305-0007

19

20   For the Defendant:
                          Jeffrey P. Nunnari
21                        3349 Executive Parkway, Suite D
                          Toledo, Ohio 43606
22                        (419) 531-5675

23

24   Court Reporter:      Angela D. Nixon, RMR, CRR
                          1716 Spielbusch Avenue
25                        Toledo, Ohio 43624
                          (419) 260-5259
```

1    Proceedings recorded by mechanical stenography, transcript

2    produced by notereading.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    COURTROOM DEPUTY:  Case 3:15CR24-4, United States

2 of America versus Pablo Duran, Jr., matter called for

3 sentencing.

4    THE COURT:  Counsel, if you'll approach for one

5 minute, please.

6     (A side bar conference was had on the

7     record.)

8    THE COURT:  Deanna just asked a question as to

9 whether there's any objection to having the other

10 defendants present during each of the sentencings?  Doesn't

11 matter to me.

12    MR. NUNNARI:  I don't think it matters for me.

13    THE COURT:  And if it does to either of you --

14    MR. KLUCAS:  It doesn't matter to us.

15    (Side bar conference concluded.)

16    THE COURT:  Counsel, do you have any objections

17 to the Presentence Report?

18    MR. NUNNARI:  Not to the final Presentence

19 Report.

20    THE COURT:  Did you read the Presentence Report,

21 Mr. Duran?

22    THE DEFENDANT:  Yes, I did.

23    THE COURT:  Did you understand what it says and

24 what it means?

25    THE DEFENDANT:  Yes, I did.

```
 1              THE COURT:  Did your lawyer go over it with you?

 2              THE DEFENDANT:  Yes, he did.

 3              THE COURT:  Mr. Nunnari, there was a plea

 4   agreement in this case; is that correct?

 5              MR. NUNNARI:  There was, Your Honor.

 6              THE COURT:  On reviewing the transcript, it

 7   appears that the -- there's been a bit of an oversight, and

 8   that is that I don't believe that your client was directly

 9   asked if he understood as part of his plea agreement he's

10   waived completely any right to an appeal or post conviction

11   relief under Section 2255, habeas corpus or otherwise,

12   unless and except if I would give a sentence in excess of

13   the statutory maximum.

14              MR. NUNNARI:  Yes, Your Honor.

15              THE COURT:  Did you understand that, Mr. Duran?

16   Did you hear what I just said?

17              THE DEFENDANT:  Yes, I did.

18              THE COURT:  And do you understand that basically

19   you've given up your right to appeal --

20              THE DEFENDANT:  Yes, sir.

21              THE COURT:  -- unless I were to impose a sentence

22   in excess of the 20 year statutory maximum?

23              THE DEFENDANT:  Yes, I understand.

24              THE COURT:  And Mr. Nunnari went over the

25   Presentence Report with you?
```

```
 1            THE DEFENDANT:  Yes.

 2            THE COURT:  And did he answer any questions you

 3   may have had about it?

 4            THE DEFENDANT:  Yes, he did.

 5            THE COURT:  And are you completely satisfied that

 6   he has done everything that he should have done to prepare

 7   both you and him for today's proceedings?

 8            THE DEFENDANT:  Yes, I did.

 9            THE COURT:  Mr. Nunnari, was this, quote, an open

10   file case?  In other words, to what extent were you

11   apprized of the government's likely evidence against your

12   client?

13            MR. NUNNARI:  Yes, Judge, it was an open file

14   case.

15            THE COURT:  Okay.  And did you discuss -- without

16   going into any details -- I will simply assume, unless you

17   can indicate otherwise, that you discussed what you learned

18   from the government and undertook to advise your counsel --

19   your client to the best of your ability?

20            MR. NUNNARI:  Yes, Judge.

21            THE COURT:  Okay.  And Mr. Duran, are you fully

22   and completely satisfied that your lawyer, at every stage

23   of the proceedings, undertook to do those things necessary

24   to inform himself and you about what the government's case

25   appears to be and otherwise to prepare himself completely,
```

1    thoroughly and adequately to represent you at each stage of

2    these proceedings?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Is there anything that he did that

5    you told him not to do, that he did it anyway?

6              THE DEFENDANT:  Not that I'm aware of.

7              THE COURT:  Is there anything you told him to do,

8    go talk to this person, go visit this, go research that,

9    file that sort of motion, whatever, was there anything that

10   you asked or told him to do that he didn't do?

11             THE DEFENDANT:  No.

12             THE COURT:  Just to confirm the guideline range,

13   it's my understanding the base offense level of 11,

14   criminal history category of one, guideline range of 8 to

15   14 months.  Counsel, is that correct from the government?

16             MS. MULHAUSER:  That's correct, Your Honor.

17             THE COURT:  Mr. Nunnari, is that your

18   understanding?

19             MR. NUNNARI:  It is, Your Honor.

20             THE COURT:  Okay.  On behalf of the government?

21             MS. MULHAUSER:  Your Honor --

22             THE COURT:  I should indicate I'm inclined to

23   give him a sentence within the guideline range.  I have

24   read the Presentence Report.  Obviously I've heard the

25   victim impact testimony.  I also understand that this

1    defendant's participation was induced by his own father,

2    that he's an American citizen, that he has no prior

3    criminal record, and that compared to some of the other

4    defendants, his involvement was substantially less, and

5    that he had nothing to do with the recruitment, bringing

6    the -- smuggling into this country and transportation to

7    the hirees of any of the victims, is that correct?

8         MS. MULHAUSER:  That does adequately summarize

9    the government's position.  We will be asking for a

10   guideline sentence.  We would also ask -- I'm not certain

11   whether The Court has adopted the magistrate's order of the

12   guilty plea.

13        THE COURT:  I have.

14        MS. MULHAUSER:  Thank you, Your Honor.  So the

15   government would ask for a guideline sentence for the

16   reasons laid out by The Court.

17        MR. NUNNARI:  Your Honor, thank you.  I tendered

18   a sentencing memorandum to The Court, I'm sure The Court

19   has reviewed it.  I'm not going to be repetitive except to

20   highlight the fact that as I was sitting here --

21        THE COURT:  As I understand it, the defendant's

22   own father is now a fugitive?

23        MR. NUNNARI:  Yes.

24        THE COURT:  Having put his son, in effect, the

25   sacrificial lamb to atone not only for his sins but for

1   those of his father, who as I understand it was so far --
2   was substantially more active and involved and a culpable
3   participant in the activities that bring us here today.
4          MR. NUNNARI:  I would agree with that
5   observation, Your Honor.  It was telling to note that none
6   of the victim impact statements, the allocation statements
7   today even referenced Mr. Duran.  As we were sitting there
8   listening to remarks, I asked Mr. Duran which one of you
9   guys is the bad guy?  Which one's Mr. Castillo?  I don't
10  know I've never seen him before.  So that indicates the
11  level of his involvement.  It's basically to find, to
12  transport the workers from the trailer park to the job
13  sites.
14          It's also relevant to note the description of the
15  conditions, the way that these workers were treated.  In
16  contrast, Mr. Duran often went without in order to make
17  sure that the workers had adequate food and drinks during
18  their work shifts.  And I think that's a very telling thing
19  about Mr. Duran.  I've been working with him very closely
20  on this matter.  He seems to be a fine young man, nice
21  family.  I've met his wife.  I understand he has three
22  children in the home.
23          Judge, we understand that The Court
24  is constrained to impose a guideline sentence.  We know
25  that the sentence does fall within zone B of the sentencing

1    table.  We would very strongly encourage The Court to

2    consider a sentence that imposes perhaps a day's

3    incarceration, and then to confine Mr. Duran to home

4    detention for the duration of the balance of the sentence.

5    He was working, he's working hard.  He's stayed out of

6    trouble.  He's been on pretrial release with absolutely no

7    issues whatsoever, Your Honor.  This is an unfortunate

8    learning experience for Mr. Duran, especially as Your Honor

9    has noted to be put in this position by his own father.  He

10   was basically in a position to go along to get along.  He

11   understands after having been made aware of all of these

12   occurrences, the terrible conditions in which these people

13   lived and how they got here, he's aware of his guilt, and

14   he takes responsibility for that.  So we would ask The

15   Court to consider a sentence at the low end --

16        THE COURT:  Mr. Duran, would you like to speak --

17   first of all, does the government dispute any of the

18   factual contentions just made by -- by Mr. Nunnari on

19   behalf of Mr. Duran?

20        MS. MULHAUSER:  The government does not dispute

21   any of those facts.

22        THE COURT:  Mr. Duran --

23        THE DEFENDANT:  No.

24        THE COURT:  -- you have the right to speak on

25   your own behalf before I decide what I'm going to do.

1          THE DEFENDANT:  I guess I just want to apologize

2     for any harm that I have caused.  That wasn't my intention,

3     and that I am truly sorry.

4          THE COURT:  What was the period of this

5     defendant's involvement in the overall time frame?  Take

6     whatever time you need to check your notes and so forth, or

7     consult with the case agent if you want.

8          MS. MULHAUSER:  Your Honor, it is July 2013 to

9     December 2014, so about a year-and-a-half.

10          THE COURT:  Okay.

11          MS. MULHAUSER:  Your Honor, it was -- the

12     defendant moved back and forth between Iowa and Ohio, so he

13     was not participating during all of that time period, but

14     he was participating substantially during that time period,

15     and that is what he admitted to in his plea.

16          MR. NUNNARI:  Judge, Mr. Duran has indicated that

17     he was present here in Ohio engaged in these activities

18     from May of 2013 to April of 2014.  Wait.  He said no.

19     That's it.

20          THE COURT:  To the extent that the government is

21     aware of the -- to the extent to which any of the persons

22     he was involved in transporting were juveniles at the time

23     under the age of 18?

24          MS. MULHAUSER:  Yes, Your Honor, several of them

25     were juveniles under the age of 18.  And Mr. Duran has

1    acknowledged that he understands that in his allocation

2    affidavit.

3            MR. NUNNARI:  Your Honor, the other thing I

4    should be noted is that the original Presentence Report

5    scored the base offense level without any adjustments at

6    19.  The government and I both objected to that, and --

7            THE COURT:  My understanding is the offense level

8    is what it is, there's no dispute about that.

9            MR. NUNNARI:  Yeah, just to point out that the

10   two points that were originally ascribed were taken off,

11   and that those two points were because the alien was

12   involuntary detained through coercion or threat or in

13   connection with demand for payment after being smuggled

14   into the United States.  It was agreed upon that Mr. Duran

15   had no part in any of that kind of --

16           MS. MULHAUSER:  Your Honor, the government would

17   like to make clear that it was in the defendant's plea

18   agreement, and it is in the PSR that the defendant

19   knowingly transported minors.

20           MR. NUNNARI:  We don't dispute that.

21           THE COURT:  Mr. Duran, anything further?

22           THE DEFENDANT:  No, Your Honor.

23           THE COURT:  Pursuant to the Sentencing Reform Act

24   of 1984 and 18 U.S. Code Section 3553(a), it's the judgment

25   of this Court that defendant be and hereby is committed to

1    the custody of the Bureau of Prisons to serve a term of 14

2    months.  That is a guideline sentence, it's the high end of

3    the guidelines, and that reflects the information I learned

4    during the course of this colloquy with regard to the age

5    of the persons -- some of the people being transported, a

6    rather troublesome feature of this case is of course the

7    age of many of the people who were forced into these

8    situations -- these circumstances.  And as a result of the

9    minority, I think it's fair to conclude that they were

10   particularly compelled to remain where they were and endure

11   what they did until the investigation relieved them of that

12   period of, in all practical events, that confinement.  And

13   that will be followed by a three year term of supervised

14   release.

15          Within 72 hours of your release from confinement,

16   you shall report in person to the probation office in the

17   district in which you are released or the pretrial service

18   and probation office in this district.  You also will be --

19   was it one count to plead?  Special assessment of $100.

20   And when can that be paid, Mr. Nunnari?  I would expect to

21   permit the defendant to remain free on the same conditions

22   of release pending notification of where he needs to

23   report.

24          MR. NUNNARI:  We can take care of the special

25   assessment probably as soon as today, Your Honor.

1          THE COURT:  Okay.  And there is, I assume, the

2     restitution in this case, what's the restitution amount?

3          MS. MULHAUSER:  Your Honor, with respect to this

4     defendant, there is not restitution.

5          THE COURT:  Okay.  There'll be no restitution.

6     There'll be no fine.  I believe that the severity of the

7     sentence itself is sufficient to make a fine unnecessary.

8          While on supervised release, you shall comply

9     with the following standard conditions adopted by this

10    court.  You shall be made aware more fully and completely

11    in detail upon beginning your term of supervision.  So if I

12    don't recite all of them now, that doesn't mean that they

13    do not apply.

14         Simply to summarize, you shall not commit another

15    federal, state or local crime.  If you have any substantive

16    encounter with a police officer, whether or not it leads to

17    your arrest or charge, you shall notify the probation

18    officer immediately.  You shall not possess a firearm,

19    destructive device or deadly instrumentality.  Mr. Duran, I

20    want you to understand you can never again lawfully possess

21    a firearm of any kind.  You have been convicted of a

22    serious crime and felony, and federal law prohibits

23    possession of any firearm, ammunition or any accessories

24    that can be used as a firearm by somebody who's been

25    convicted of a felony.  I gather it's not necessary to

1    impose a substance -- a drug testing requirement?

2              MS. MULHAUSER:  I don't.

3              PROBATION:  No, Your Honor.

4              THE COURT:  You shall, however, refrain

5    completely from any unlawful use of controlled substances.

6    You shall diligently seek to obtain, and if you obtain,

7    diligently seek to maintain lawful gainful employment.  You

8    shall cooperate fully with the probation officer in efforts

9    that that officer makes on your behalf in that regard.  You

10   shall also provide the probation officer with full and

11   complete information about your financial circumstances.

12   You shall not open any new lines of credit, in other words,

13   no credit cards, no financial obligations, bank loans,

14   mortgages, whatever, without the prior approval and

15   concurrence of the probation officer.  You shall submit to

16   the collection of DNA by the Bureau of Prisons.  Is there

17   anything else I should mention?

18             PROBATION:  Yes, Your Honor, firearms

19   restriction.

20             THE COURT:  I just did that.  The probation

21   officer indicates it's her recommendation, which I

22   overlooked, that restitution be ordered, and

23   that's several -- 4,000 -- how much?

24             PROBATION:  I have $4,750, but there was other

25   information regarding victim loss of $9,000, so I'm not

 1    sure --

 2              THE COURT:  I'll leave it at $4,750.  That

 3    amount's to be paid in full at the time the supervised

 4    release is completed.  Anything else I should mention?

 5              PROBATION:  Windfall condition.

 6              THE COURT:  Pardon?

 7              PROBATION:  Windfall condition.

 8              THE COURT:  And if you were to receive any sort

 9    of benefit, financial benefit, in other words to use a

10    colloquial term windfall, you shall notify the probation

11    officer, and it shall be applied to any outstanding amount

12    to restitution.

13              MS. MULHAUSER:  Your Honor, may we request that

14    the restitution will be joint and several with the other

15    defendants?

16              THE COURT:  It will be joint and several with all

17    defendants.  And if the amount is greater, only the amount

18    indicated will be expected of him.

19              Let me say a couple things, Mr. Duran,

20    particularly in view of your residence.  You might well not

21    be supervised by me, but you should understand that the

22    terms and conditions of supervised release are not

23    optional.  They are court orders.  And no Judge likes to

24    have his or her orders disregarded.  There's no such thing

25    as a technical violation.  They're all important and are to

1    be fulfilled.

2              The other thing that I would advise you is work

3    cooperatively with the probation officer.  If you encounter

4    any problems or difficulties, and I doubt that you will,

5    but if you do, be honest and forthright with the officer,

6    because if you're not truthful to the U.S. probation

7    officer, you are lying to a federal judge.  The Judge,

8    whether it is I or some other judge, wherever you may be,

9    subject to supervision, is your ultimate probation officer.

10   We all work closely with the probation officers and are

11   kept fully informed and apprized of one's progress or lack

12   thereof of supervised release.

13             Candidly, I'm quite confident that there's every

14   reason to expect that your term of supervised release will

15   be satisfied without incident or problem, just as your

16   pretrial release performance has been that way.

17             To state my reasons for the sentencing, it is

18   uncharacteristically at the high end of the guidelines to

19   be quite candid with you, however, this is an extremely

20   serious offense.  Being complicit in the virtual

21   enslavement and involuntary servitude of anybody is

22   heinous, hideous and immoral to an unimaginable extent.  I

23   realize that your involvement was, quote, at the lower end.

24   However, none of this would have happened if there hadn't

25   been somebody willing to drive people back and forth to

1    work as these persons were required to work according to my

2    understanding in reading the Presentence Reports.  Very

3    serious offense, involves several persons, several of whom

4    are juveniles.

5            I have taken into consideration in deciding to

6    remain within the guidelines the representations made by

7    Mr. Nunnari and acknowledged by the government that to some

8    extent you undertook to treat some of these individuals,

9    perhaps all of them from time to time in a more humane way,

10   which encouraged me to do so.  But nonetheless, that does

11   not overcome in my mind completely the seriousness of the

12   offense.

13           A principle objective that I'm undertaking to

14   accomplish by my sentence, and the fact that it is at the

15   high end of the guideline range, is to emphasize the

16   revulsion that I feel upon reading the Presentence Reports,

17   and revulsion I think any citizen would feel upon becoming

18   aware of the information that's been brought to my

19   attention, including the information brought to my

20   attention here in open court this morning.  So I hope that

21   this sentence serves a public deterrent effect.  Also hope

22   that perhaps it might encourage others who may be subjected

23   to the same conditions, I realize it may not be a very

24   likely hope to be accomplished, but those who are

25   victimized in this way should understand, and their

```
 1    families should understand that once circumstances of this

 2    sort are called to the attention of the federal

 3    authorities, they will be investigated and prosecuted

 4    vigorously, and in all likelihood successfully.  And I

 5    would expect that other federal judges would view this kind

 6    of conduct with the same degree of abhorrence as I do and

 7    feel as I do, that would otherwise justify a severe

 8    sentence is warranted and appropriate.  I don't think it's

 9    necessary for purposes of individual deterrence to impose

10    any greater sentence than perhaps even the sentence that

11    I've imposed.  But public deterrence is the fundamental

12    concern and a principle objective that I'm trying to serve

13    by giving you, within the guidelines, the most severe

14    sentence available.  I could have given you a more severe

15    sentence.  I did not elect to do so.

16            I also hope that the sentence is of the sort that

17    I've imposed upon you will enhance respect for the law.  I

18    think all things considered it's a fair, just and

19    appropriate sentence.  And most importantly, I think it is

20    sufficient but not greater than necessary to accomplish the

21    purposes of investigation, prosecution, conviction.

22            So would the government request that I express

23    anything further with regard to the application of sentence

24    with regard to the 3553(a) factors?

25            MS. MULHAUSER:  No, Your Honor, the government is
```

1  satisfied.

2          THE COURT:  Mr. Nunnari?

3          MR. NUNNARI:  I'm sorry, Your Honor?

4          THE COURT:  Would you request that I express

5  anything further with regard to the 3553(a) factors?

6          MR. NUNNARI:  No, Your Honor.  Thank you.

7          THE COURT:  Does either party have any objection

8  to any part of these proceedings not previously made?

9          MS. MULHAUSER:  No, Your Honor.

10         MR. NUNNARI:  No, Your Honor.

11         THE COURT:  Mr. Duran, you may have some grounds

12 to appeal.  You've waived your right to appeal.  However, I

13 have to notify you that if grounds for appeal appear to

14 exist, discuss that with Mr. Nunnari, and consult with him

15 with regard to what appears to be in your best interest

16 with regard to challenging either your conviction or your

17 sentence.  You must do so within 14 days of the date of

18 entry of my judgment which will occur sometime later today

19 or tomorrow.  If you fail to do so, you will waive forever

20 whatever right you might otherwise have had to challenge

21 your conviction or your sentence, either by way of direct

22 appeal, habeas corpus or post constriction relief under 28

23 U.S.C. section 2255.  You understand that?

24         THE DEFENDANT:  Yes.

25         THE COURT:  I should indicate to you in terms of,

1    I'm sure Mr. Nunnari will as well, that if you were to

2    undertake an appeal, you would put at risk the government's

3    willingness to abide by the promises it made to you, and I

4    suspect that those promises encouraged you to plead guilty

5    and to -- rather than potentially stand trial and I would

6    assume face a substantially greater sentence, certainly

7    would be no acceptance of responsibility if you were to

8    stand trial.  I do have to notify you that if there is some

9    basis for an appeal, talk that over with Mr. Nunnari and go

10   from there.

11           Anything further from the government?

12           MS. MULHAUSER:  Nothing further.

13           PROBATION:  Your Honor, voluntary surrender.

14           THE COURT:  Yes, I mentioned that earlier.  You

15   will be notified -- first of all, you've got to keep the

16   pretrial service and probation officer -- office whether in

17   this district or home in Iowa, you must keep them informed

18   of your residence, so the Bureau of Prisons will notify you

19   when and where to report.

20           The same conditions of pretrial release will be

21   maintained.  I trust it goes without saying that despite

22   what lies ahead, that very important unpleasant prospect,

23   if you were to fail to appear, you would be caught sooner

24   or later.  You'd be prosecuted, receive a five-year term

25   for bond jumping, you understand that?  And that will be in

1    addition to the 14 months I've imposed today.  Do you

2    understand that?

3              THE DEFENDANT:  Yes, I do.

4              THE COURT:  Anything further from the government?

5              MS. MULHAUSER:  Nothing further.

6              THE COURT:  Mr. Nunnari?

7              MR. NUNNARI:  No, Judge.  Thank you.

8              THE COURT:  That will conclude this proceeding.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3          I certify that the foregoing is a correct transcript

4     from the record of proceedings in the above-entitled matter.

5

6     s:/Angela D. Nixon

7     ---------------------------              -----------

8     Angela D. Nixon, RMR, CRR                Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25